# EXHIBIT 1

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

CHRISTOPHER MCNAIR, individually, and
on behalf of all others similarly situated,

        *Plaintiff,*

    *v.*

TEMPLETON RYE SPIRITS, LLC, an Iowa
limited liability company,

        *Defendant.*

Case No.

2014CH14583
CALENDAR/ROOM 09
TIME 00:00
Class Action

## CLASS ACTION COMPLAINT

Plaintiff Christopher McNair brings this Class Action Complaint against Defendant

Templeton Rye Spirits, LLC, ("Templeton" or "Defendant") based upon Defendant's practice of

deceptively marketing its Templeton Rye whiskey. Plaintiff, for his Class Action Complaint,

alleges as follows upon personal knowledge as to himself and his own acts and experiences and,

as to all other matters, upon information and belief, including investigation conducted by his

attorneys.

## NATURE OF ACTION

1.      Defendant is the owner of a "small-craft" whiskey brand—Templeton Rye—with

its headquarters in the rural town of Templeton, Iowa.

2.      Defendant's Templeton Rye is marketed as the revival of a prohibition-era

whiskey recipe that was the favorite drink of Chicago mobster Al Capone. Since its rebirth

within the past decade, Defendant has marketed Templeton Rye as being "small batch" and

"made in Iowa." Consumers, seeking an alternative to mainstream, mass-produced alcoholic

beverages have purchased hundreds of thousands of bottles of Defendant's Templeton Rye and

have paid a premium price over other whiskeys to obtain those qualities.

3.     However, directly contrary to these representations, Defendant's whiskey isn't actually made in Iowa. The whiskey—despite being named after Templeton, Iowa and owned by a company that owns a distillery there—is instead distilled and aged at the Indiana factory of MGP Ingredients, Inc. that also distills and ages whiskey for countless other brands. In Defendant's own words once the source of its whiskey was publically revealed: "[i]t's very simply put: We buy the whiskey in barrels from (MGP)."[1]

4.     Unfortunately, thousands of consumers across the country have been injured by Defendant's deceptive marketing practices. Those consumers, including Plaintiff, purchased Templeton Rye in reliance on the truth and accuracy of Defendant's representations and thought they were buying authentic Iowa whiskey and were unaware of the actual origin of its whiskey. Accordingly, Plaintiff McNair, on his own behalf and on behalf of a class of similarly situated individuals, brings this lawsuit and seeks injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees. At this time, Plaintiff does not seek a specific amount of damages, does not seek punitive damages, and does not seek damages (monetary and/or injunctive) and attorneys' fees that combined would meet or exceed $5,000,000 inclusive of costs and interest. Any calculation of total damages will be based on, and is in the possession of, Defendant.

## PARTIES

5.     Plaintiff Christopher McNair is a natural person and citizen of the State of Illinois.

6.     Defendant Templeton Rye Spirits, LLC, is a limited liability company

---

[1]     *Templeton Rye to change labels, clarifies how much made in Iowa,* http://www.press-citizen.com/story/news/local/2014/08/28/templeton-rye-change-labels-clarifies-much-made-iowa/14766993/ (last visited Sept. 9, 2014).

incorporated and existing under the laws of the State of Iowa with its principal place of business

located at 209 East 3rd Street, Templeton, Iowa 50211. Templeton does business in the State of

Illinois, this County, and nationwide.

## JURISDICTION AND VENUE

7.      The Court has personal jurisdiction over this action pursuant to 735 ILCS 5/2-

209(a)(1) because the Defendant does business in Illinois, Plaintiff McNair is a resident of

Illinois, and Defendant committed tortious acts within Illinois.

8.      Venue is proper because Defendant does business in Cook County and the causes

of action arose, in substantial part, in Cook County.

## COMMON FACTUAL ALLEGATIONS

### *A Brief Introduction to Templeton and its Templeton Rye Whiskey.*

9.      For about a decade, Defendant has produced "small batch" whiskey sold under

the brand name Templeton Rye. Defendant claims that its rye is made according to a "nearly

century-old recipe." To date, Templeton has produced over one million bottles of its Templeton

Rye and has sold hundreds of thousands of bottles nationwide.

10.     Defendant is headquartered and has a distillery in a building located in

Templeton, Iowa, shown in Figure 1.



(**Figure 1**, showing Templeton's purported "distillery" as it appears on
Facebook.com)

***Templeton Deceives Consumers into Thinking that Templeton Rye is "Small-Batch" and Small-Town Whiskey***

11. Since the reincarnation of the "Templeton" name, Defendant has had the singular aim of convincing consumers that its whiskey is an authentic Iowan product—unlike the hundreds of other whiskeys on the market. According to Defendant, Templeton Rye is an authentic, small-town whiskey made in Templeton, Iowa, population 362. Defendant represents that its recipe dates back to the prohibition era when distillers in Templeton made some of the finest whiskey in the country.

12. The whiskey was so good, Defendant claims, that notorious Chicago figures, such as Al Capone, drank it by the barrel. On its Facebook.com webpage, Templeton explains:

> When Prohibition outlawed the manufacture and sale of alcoholic beverages in 1920, many enterprising residents of the small town Templeton, Iowa, chose to become outlaws – producing a high caliber and much sought-after whiskey known as Templeton Rye.

13. But after prohibition was repealed, the recipe for "Templeton rye" was lost and the whiskey was not officially sold until it was revived in the early part of the 21st century by a man with apparent Iowan roots. That man, Scott Bush, then partnered with a local Templeton distiller to supposedly bring the prohibition-era recipe back to life.

14. Central to this story is the connection to Templeton, Iowa. Without this connection—and the fabled link to figures like Al Capone—Defendant's whiskey would be lost on the shelf. It follows, then, that Defendant crafted its marketing plan to influence the willingness of consumers to purchase its product by representing that Templeton Rye originates from Templeton, Iowa, and is produced in a manner substantially different from large alcohol conglomerates.

15. For example, Templeton has produced, sold, and given away t-shirts that say "TEMPLETON RYE MADE IN IOWA." (*See* Figure 2.)



**(Figure 2.)**

16.     Similarly, on its Twitter feed, Templeton offers salutations "from Templeton,

Iowa, home of The Good Stuff [i.e., Templeton Rye]" and selected its location as "Templeton,

Iowa." (*See* Figure 3.)



**(Figure 3.)**

17.     Defendant also markets to consumers by entering into partnerships with bars and

restaurants for "tasting" and "education" events. At those events, Defendant's representatives

and agents, amongst other things, celebrate the history of the original Templeton rye and

represent to consumers that Defendant's Templeton Rye is true to that chronicle. For example,

Figure 4 shows a screenshot of a website advertising a "Tasting & Education" event where the

"Templeton Rye team" will "share some entertaining stories about Templeton's unique place in Prohibition America and bootlegging stories *from Iowa to Chicago*." (*See* Figure 4) (emphasis added).



Templeton Rye Tasting & Education
Thurs, August 25, 8-10pm

Meet the Templeton Rye...

**(Figure 4.)**

18.     Likewise, Figure 5 shows a flyer promoting a "RYE EDUCATION" event at a local Chicago bar. There, the "folks from Templeton Rye" will provide a "seminar and tasting" of "Templeton Rye Prohibition Era Whiskey, a small batch rye whiskey made in the tiny town of Templeton, Iowa (population 350)."



**(Figure 5.)**

19.     Defendant's scheme continues at the retail stores where Defendant sells its

Templeton Rye. For instance, on the Binny's Beverage Depot website, Defendant's caused the

"Region" of the Whiskey to be populated with "Iowa" and the description to parrot the same

"Prohibition-era" story. (*See* <u>Figure 6</u>.)



**(Figure 6.)**

20.     Defendant also caused Bevmo.com, an online liquor store, to represent that

Templeton Rye is "Produced in the small town of Templeton Iowa." (*See* <u>Figure 7</u>.)



**(Figure 7.)**

21.     Defendant continues its deception even when consumers visit its headquarters and

"distillery" in Templeton, Iowa. According to Defendant, consumers can pay $5 to go on a tour

of Defendant's "production area, barrel warehouse, bottling line and tasting room." A

Templeton-area newspaper reported on one such tour when the great-niece of Al Capone went to

Templeton as a brand spokeswoman.[2] In the article, the newspaper states that consumers can take

a "tour of Templeton Rye Spirits distillery" in "Templeton," and that "for years, Templeton Rye

has levered its colorful history for marketing purposes with Al Capone as a central figure of

intrigue. To have the last living member of his family to carry the Capone name in the *local*

*distillery*."

22.     But as explained below, there is nothing "local" about the distillery where

Defendant's Templeton Rye is made. Rather, it is actually made in a large Indiana factory that

also makes other "cost effective" "alcohol products." As explained by Vern Underwood,

Chairman of Templeton, after news of its deception was publicized, the choice to not distill its

own product was made because "[w]hen we got involved in this thing, I thought, 'I'm not going

to spend millions of dollars on the distillery not knowing if I'm going to get booted out of town

or never sell any of this stuff.'"[3] As such, Defendant attempted to have the best of both worlds

including cheap, large-scale production and a small-town story.

## *Templeton Rye Isn't "Made in Iowa"—Instead, it's Distilled in an Indiana Factory that Distills Whiskey for Dozens of Other Brands.*

23.     Taken as a whole, Defendant's marketing plan is clear: convince consumers that

Templeton Rye is an authentic Iowan product and charge a premium for the product on that

basis.[4] Unfortunately, this isn't the case. Defendant's Templeton Rye is distilled, barreled, and

aged at a factory in Indiana that is owned by a company that also specializes in distilling

---

[2]     *Templeton Rye's history roars back with Capone visit - Carroll Daily Times Herald,*
www.carrollspaper.com/Content/Local-News-Archive/Features/Article/Templeton-Rye-s-history-roars-back-with-Capone-visit/1/284/14333 (last visited Aug. 28, 2014).

[3]     *Templeton Rye to change labels, clarifies how much made in Iowa,* http://www.press-citizen.com/story/news/local/2014/08/28/templeton-rye-change-labels-clarifies-much-made-iowa/14766993/ (last visited Sept. 9, 2014).

[4]     For comparison, major commercial bourbon brands such as Jim Beam ($14.99), Maker's Mark ($26.99), Wild Turkey ($21.99), and Evan Williams ($12.99), all sell for considerably less for the same size bottle.

"industrial alcohol."

24.     Though Defendant's headquarters are in Templeton, Iowa, shown in Figure 1 and reproduced below, and Defendant does own a distillery there, the Templeton Rye sold to the public is not distilled in that town. Instead, Templeton outsources its distillation needs to non-party MGP Ingredients, Inc., ("MGP") in Lawrenceburg, Indiana. (*See* Figure 8.) MGP is a massive international corporation with revenues in excess of $300 million.



(**Figure 1**, showing where Defendant represents Templeton Rye is made.)



(**Figure 8**, showing where Defendant's Templeton Rye is actually made.)

25.     MGP states that the "beverage alcohol" it produces "consists primarily of world

class vodka, gins, bourbon and whiskeys and is sold in *bulk form*."[5] MGP goes on to state that "[c]ustomers who purchase unaged whiskey or bourbon may also enter into separate warehouse service agreements with us, allowing the product to age."[6]

26.     And that is exactly the process Defendant uses for its Templeton Rye. Defendant first purchases MGP's unaged whiskey in bulk. Then Defendant has MGP fill barrel upon barrel with the whiskey and contracts with MGP to store the barrels *in Indiana* while the product ages for four years. Then, after aging, Defendant transports the barrels to Templeton, Iowa where it simply bottles the whiskey.

27.     Thus, the only activity that occurs in Iowa is the emptying of the barrels and the filling of the bottles—hardly the "made in Iowa" Defendant represents.

28.     Defendant further misrepresents the source and use of its "prohibition-era" recipe that it claims it revived through its small-batch rye whiskey. By its own recent admission, Defendant now admits that it buys whiskey distilled from a "stock" MGP recipe and "not one tied to Templeton's Prohibition era." The reasoning, Defendant states, is that "reproducing the [] family's recipe is impossible due to federal rules regulating the proof and production of rye whiskey."[7]

## *Consumers are Upset to Learn that the "Good Stuff" is not "Made in Iowa" but Made in a Factory in Indiana.*

29.     The consumers that have purchased Templeton Rye, such as Plaintiff, did so

---

⁵     *MGP - Key Facts*, http://www.mgpingredients.com/about-mgp/facts/ (last visited Aug. 28, 2014) (emphasis added).

⁶     *MGP 2013 Annual Report & 10-K*, http://files.shareholder.com/downloads/MGPI/3430091596x0x745731/ 4DCDEB95-FFB8-4EF2-88EA-6A07056EF5A8/MGP _Annual_Report_FINAL.pdf (last visited Aug. 28, 2014).

⁷     *Templeton Rye to change labels, clarifies how much made in Iowa*, http://www.press-citizen.com/story/news/local/2014/08/28/templeton-rye-change-labels-clarifies-much-made-iowa/14766993/ (last visited Sept. 9, 2014).

because the small-scale processes used to make the whiskey and its place of origin matter to them and they are willing to pay a premium for a product with these qualities and characteristics. The unique qualities of Templeton Rye marketed by Defendant—such as its origin from Templeton, Iowa, its status as "Made in Iowa," and its connection to the prohibition-era "Templeton rye"—contributed greatly to Plaintiff's and the other consumers' decisions to purchase Defendant's whiskey.

30.     Consumers believe they are purchasing Iowa whiskey, made in Iowa, distilled just like the prohibition-era "good stuff", and with Iowa ingredients (*e.g.*, Iowa water), when in fact, they are purchasing whiskey distilled in Indiana and with ingredients, including water, from Indiana. Defendant knows that consumers are willing to pay more for a "small-batch" Iowa whiskey because the quality is higher, and Plaintiff and consumers believe they are paying costs associated with higher-quality ingredients and for small-scale production.

31.     It's not surprising, then, that since the media has uncovered that Defendant's Templeton Rye is mass-produced in Indiana, consumers have been frustrated and have turned to the internet to speak their minds. One man stated, "I'm just NOW learning about the deceptiveness of Templeton Rye. I'm from Iowa. This is sad."[8] Likewise, a woman referencing a news article that exposed Defendant's deception said that Defendant's practices are "Disappointing to say the least."[9] Another consumer succinctly explained his or her thoughts:

> Once word spread [of the production of Templeton Rye about a decade ago], it was impossible to find except in Iowa, and there in limited quantities. It wasn't unusual to be gifted a bottle from someone's private stash upon a special occasion. … Now jump again to a few years ago. Templeton magically starts

---

[8]     *The Chuck Cowdery Blog: News From Templeton Rye*, chuckcowdery.blogspot.com/2011/09/news-from-templeton-rye.html (last visited Aug. 28, 2014).

[9]     *Comment by Johanna Madden*, https://www.facebook.com/templetonrye/timeline (last visited Aug. 28, 2014).

appearing everywhere, and I picked up a bottle, but it didn't taste right. Previously
Templeton had announced it was expanding, but there was no way they could
have jumped to meet demand that quickly. Then the news hit - the new stuff was
most likely from Indiana, not Iowa. Since then I've heard promises of bringing it
all back to Iowa once they build out production, and for now I wait. ... Sadly,
meanwhile, the new Indiana made Templeton is not really as good and is ruining
the brand. I would have rather had scarcity than what happened, but I'm sure
Templeton is making money hand over fist. So, for those of you only tasting
Templeton of new, have heart, maybe somehow, someday, you'll have that which
was made in Iowa, and it will be oh so much better.[10]

32. Templeton's Chairman, Mr. Underwood, summed up Defendant's approach to

selling whiskey in one simple statement: "[t]he whiskey is not the most important thing...[t]he

town of Templeton is the most important thing and the state of Iowa. The whiskey, almost is the

afterthought. It helps. It brings this to life."[11]

## PLAINTIFF MCNAIR'S EXPERIENCE

33. Plaintiff McNair has purchased more than a dozen bottles of Templeton Rye since

2008, with his most recent purchases in 2014. Plaintiff McNair has "liked" Templeton on

Facebook.com and has had countless Templeton messages appear on his computer while he

browsed his Facebook newsfeed. In addition, Plaintiff McNair viewed numerous advertisements

for Templeton Rye in bar and restaurant publications and other industry websites. The marketing

and advertisements Plaintiff McNair viewed about Templeton Rye all represented or supported

the fact that Templeton Rye was "Made in Iowa" and were substantially similar to the marketing

in Figures 1–7.

34. None of the marketing or advertisements Plaintiff McNair saw from 2008 to the

last time he purchased Templeton Rye disclosed the fact that Templeton Rye is distilled and aged

---

[10]     *Distillers vs. Bottlers | MetaFilter*, http://www.metafilter.com/141387/Distillers-vs-Bottlers (last visited
Aug. 28, 2014).

[11]     *Templeton Rye to change labels, clarifies how much made in Iowa*, http://www.press-
citizen.com/story/news/local/2014/08/28/templeton-rye-change-labels-clarifies-much-made-iowa/14766993/ (last
visited Sept. 9, 2014).

at MGP's facilities.

35.    Instead, Defendant presented misleading information that Templeton Rye is distilled, aged, and bottled in Templeton, Iowa.

36.    Relying on Defendant's misrepresentations, McNair purchased more than a dozen bottles of Templeton Rye from 2008 to 2014, paying approximately $34.99 per bottle at retailers including Benny's Beverage Depot and Gold Crown Liquors.

37.    If Plaintiff knew that Templeton Rye was not made in Iowa but was distilled and aged at MGP's facilities in Indiana, he would not have purchased Templeton Rye or he would have paid less for each bottle.

## CLASS ALLEGATIONS

38.    **Class Definitions:** Plaintiff brings this action on behalf of himself and a Class defined as follows:

**Class:** All individuals in the United States who purchased a bottle of Templeton Rye.

**Illinois Subclass:** All individuals in the Class who are domiciled in the State of Illinois.

The following persons are excluded from the Class and Illinois Subclass: 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest, and its current or former employees, officers and directors; 3) persons who properly execute and file a timely request for exclusion from the Class and Illinois Subclass; 4) persons whose claims against Defendant in this matter have been finally adjudicated on the merits or otherwise released; 5) Plaintiff's counsel; and 6) the legal representatives, successors or assigns of any such excluded persons.

39. **Numerosity:** On information and belief, thousands of consumers fall into the Class and Illinois Subclass definitions. Members of the Class and Illinois Subclass can be identified through Defendant's records, discovery, and other third party sources.

40. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and Illinois Subclass, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Class and Illinois Subclass. That is, Plaintiff and the Class and Illinois Subclass members sustained damages as a result of Defendant's deceptive marketing, typically $34.99 for the price of one bottle. Plaintiff also has no interests antagonistic to those of the Class and Illinois Subclass, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Illinois Subclass, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Class and Illinois Subclass.

41. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and Illinois Subclass as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Illinois Subclass and making final class-wide injunctive relief appropriate. Defendant's deceptive business practices apply to and affect the members of the Class and Illinois Subclass uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class and Illinois Subclass as a whole, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Class and Illinois Subclass will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by

Defendant's actions. Thus, it would be virtually impossible for the members of the Class and Illinois Subclass to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

42. **Commonality and Predominance:** Common questions of law and fact exist as to all members of the Class and Illinois Subclass, and predominate over any questions affecting only individual members. Those questions with respect to the Class and Illinois Subclass include, but are not limited to:

(a) Whether Defendant's conduct violates the Iowa Consumer Fraud Act;

(b) Whether Defendant's conduct violates the Illinois Consumer Fraud and Deceptive Business Practices Act;

(c) Whether Defendant's conduct was fraudulent or misleading;

(d) Whether Defendant's conduct constitutes fraud by omission; and

(e) Whether Defendant's conduct resulted in unjust enrichment to Defendant.

**COUNT I**
**Violation of the Iowa Consumer Fraud Act**
**(Iowa Code §§ 714H, *et seq.*)**
**(On Behalf of Plaintiff and the Class)**

43. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

44. Iowa Code § 714H.3 makes unlawful any "unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely... [on it]... in connection with the advertisement, sale, or lease of consumer merchandise."

45.     Templeton Rye is "merchandise" as defined by Iowa Code § 714.161.i because it is a good.

46.     Defendant is a "person" as defined under section Iowa Code § 714.16.1.j.

47.     Plaintiff and each member of the Class are "consumers" as defined under Iowa Code § 714H.2.

48.     By bottling and distributing bottles of Templeton Rye throughout the State of Iowa and the country and by disseminating, designing, and orchestrating the marketing in Iowa, Defendant has affected commerce and trade within the State of Iowa.

49.     Defendant engaged in unfair or deceptive acts or practices in violation of Iowa Code § 714H.3 when, in marketing and advertising Templeton Rye, Defendant failed to give Plaintiff and members of the Class adequate notice regarding the true origin of the whiskey (*i.e.*, Indiana) despite the fact that Defendant knew or should have known that the whiskey was not distilled and aged in Templeton, Iowa. Defendant intended that Plaintiff and the members of the Class would rely upon Defendant's failure to disclose the actual origin when purchasing Templeton Rye. Defendant knew of the actual origin of Templeton Rye and yet continued to sell, market, and distribute it to members of the Class and concealed the true origin of Templeton Rye from them. Defendant's acts and omissions possessed the tendency or capacity to mislead or created the likelihood of deception.

50.     Defendant also engaged in unfair or deceptive acts or practices in violation of Iowa Code § 714H.3 by making misleading statements regarding the origin of Templeton Rye. Specifically, its marketing efforts were substantially similar, and consistent with, those illustrated in Figures 1–7 and sought to convince consumers that Templeton Rye is made in Templeton, Iowa when it is in fact made at MGP's factory in Lawrenceburg, Indiana.

51.     Defendant's actions, as set forth herein, were acts related to the advertisement and sale of consumer merchandise and constitute unfair and deceptive trade practices in violation of Iowa Code § 714H.3.

52.     As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff and the members of the Class have suffered actual damages in the form of the full or partial retail price of Templeton Rye, typically $34.99 or more. Had Plaintiff and the Class known that Templeton Rye was not made in Iowa but Indiana, they would not have purchased the whiskey or they would have only purchased the whiskey at a lower price. As such, Plaintiff and members of the Class are entitled pursuant to Iowa Code § 714.H5 to recover actual damages, treble damages and attorneys' fees.

53.     Plaintiff's cause of action under Iowa Code §§ 714H.1 *et seq.* accrued on or after July 1, 2009, because Plaintiff did not discover the true origin of Templeton Rye until 2014 and was, therefore, unaware of the Defendant's fraudulent, unfair, or deceptive acts and concealments.

## COUNT II
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### (815 ILCS §§ 505/1, *et seq.*)
### (On Behalf of Plaintiff and the Illinois Subclass)

54.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

55.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (815 ILCS §§ 505/1, *et seq.*) protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

56.     The ICFA prohibits any unlawful, unfair, or fraudulent business acts or practices including the employment of any deception, fraud, false pretense, false promise, false

advertising, misrepresentation, or the concealment, suppression, or omission of any material fact.

57.    The ICFA applies to Defendant's actions and conduct as described herein because it protects consumers in transactions that are intended to result, or which have resulted, in the sale of goods or services.

58.    Defendant is a "person" as defined under section 505/1(c) of the ICFA.

59.    Plaintiff and each member of the Subclass are "consumers" as defined under section 505/1(e) of the ICFA.

60.    Templeton Rye whiskey is "merchandise" within the meaning of section 505/1(b) and its sale is considered "trade" or "commerce" under the ICFA.

61.    Defendant violated the ICFA by omitting and misrepresenting the true origin of Templeton Rye.

62.    The fact that Templeton Rye was an authentic, made-in-Templeton, Iowa product was a material selling point of Templeton Rye, and a primary reason to purchase Defendant's products over other alternative whiskeys at a premium. Plaintiff and members of the Subclass relied on Defendant's omissions about the true origin of Templeton Rye and purchased bottles of Templeton Rye.

63.    Had Plaintiff and the Subclass known that the true origin of Defendant's Templeton Rye is a factory in Indiana, they would not have purchased Templeton Rye or they would have paid less for the whiskey.

64.    By omitting the actual origin of its product, Defendant violated section 510/2(a)(2) of the ICFA which prohibits Defendant from "caus[ing] likelihood of confusion or of misunderstanding as to the source … of goods."

65.    In addition, Defendant violated section 510/2(a)(4) by "us[ing] deceptive

representations or designations of geographic origin in connection with goods."

66.     Based upon Defendant's omissions described herein, Plaintiff and the Subclass reasonably expected that Templeton Rye was made in Templeton, Iowa. This is a reasonable and objective consumer expectations based upon the circumstances. It is equally reasonable for a consumer to believe that Templeton Rye was not made in MGP's factory in Lawrenceburg, Indiana.

67.     Plaintiff and the Subclass reasonably relied upon Defendant's omissions and misrepresentations in paying to purchase Defendant's Templeton Rye.

68.     Defendant's omissions and misrepresentations regarding the origin of Templeton Rye was an act likely to mislead Plaintiff and the members of the Subclass acting reasonably under the circumstances, and constitutes an unfair and deceptive trade practice in violation of the ICFA.

69.     Defendant knew or should have known that it kept highly relevant and material information—namely, that Templeton Rye was not actually made in Iowa but that it was made at MGP's factory in Indiana—from its customers, and therefore violated the ICFA.

70.     As a direct and proximate result of Defendant's violation of the ICFA, Plaintiff and each Subclass member have suffered harm in the form of monies paid for Defendant's Templeton Rye in that they paid more for Defendant's whiskey than they would have had they known the true qualities of the product. Plaintiff, on behalf of himself and the Class, seeks an order (1) requiring Defendant to cease the unfair practices described herein; (2) awarding damages, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable; and/or (3) requiring Defendant to restore to Plaintiff and each Subclass member any money acquired by means of unfair competition (restitution).

## COUNT III
### Consumer Fraud
### (On Behalf of Plaintiff and the Class)

71.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

72.     Defendant is not permitted to engage in, unfair or fraudulent business acts or practices, including the use of any deception, fraud, false pretense, false promise, misrepresentation.

73.     Similarly, Defendant is prohibited from engaging in the concealment, suppression, or omission of any material fact. The place of origin of a consumer product is a material term of any transaction because it is likely to affect a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception related to the origin of a consumer product is materially misleading.

74.     Defendant's misrepresentation of the actual origin in all phases of the marketing and sale of Templeton Rye is likely to mislead a reasonable consumer who is acting reasonably under the circumstances.

75.     Defendant has engaged in deceptive trade practices by selling its Templeton Rye without clearly and conspicuously disclosing its actual origin and by inducing Plaintiff and the Class to purchase its whiskey based on that misrepresentation.

76.     Defendant caused substantial injury to consumers by inducing them to purchase Templeton Rye through deceptive marketing. The injury caused by Defendant's conduct is not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided.

77.     Defendant intended that Plaintiff and the Class rely on its material

misrepresentations and deception in order to induce them purchase Templeton Rye.

78.     Defendant's deception occurred during the marketing and sale of its Templeton

Rye whiskey, and therefore, occurred in the course of trade and commerce.

79.     Plaintiff and the Class have suffered harm in the form of actual damages as a

proximate result of Defendant's violations of law and wrongful conduct described herein.

80.     Plaintiff, on his own behalf, and on behalf of the Class, seeks damages for

Defendant's wrongful conduct described herein, as well as interest and attorneys' fees.

**COUNT IV**
**Fraud by Omission**
**(On behalf of Plaintiff and the Class)**

81.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth

herein.

82.     Defendant has engaged in deceptive trade practices by selling its Templeton Rye

whiskey while concealing material facts from consumers, by failing to clearly and conspicuously

disclose the actual origin (Indiana) of Templeton Rye, and by inducing Plaintiff and the Class to

proffer payment based on that omission and/or misrepresentation.

83.     The origin of goods offered for sale is a material term of any transaction.

84.     Based on Defendant's material omissions, Plaintiff and the members of the Class

did not reasonably expect that a whiskey named after a small town in Iowa, linked to an Iowan

recipe, connected to Midwestern history, and sold by company incorporated and headquartered

in Iowa would be made by MGP *en mass* with dozens of other whiskeys in Indiana.

85.     Defendant intended that Plaintiff and the Class rely on its concealment of material

facts and deception in order to induce them to purchase bottles of Templeton Rye.

86.     As a result of Defendant's concealment and misrepresentation of material facts,

Plaintiff and members of the Class were unaware of the true origin of Templeton Rye, and would not have purchased Templeton Rye, or only paid less for it, if they knew that it was not made in Iowa but was distilled and aged at MGP's facilities in Indiana.

87. Defendant had a duty to reveal the true origin of its Templeton Rye to consumers because: (1) Defendant was in a superior position to know the true origin of its whiskey; (2) Plaintiff and the Class members could not have reasonably been expected to learn or discover the whiskey's origin; and (3) Defendant's acts and omissions through its marketing, including marketing similar to those in Figures 1–7, created the misapprehension of material facts.

88. Defendant had the opportunity to design, distribute, and orchestrate its marketing to disclose the actual origin of its Templeton Rye but instead chose to design misleading marketing that concealed the true origin of its whiskey.

89. Plaintiff and the Class have suffered actual damages as a direct and proximate result of the Defendant's wrongful conduct described herein.

90. Plaintiff, on his own behalf, and on behalf of the Class, seeks damages for Defendant's wrongful conduct, as well as interest and attorneys' fees.

## COUNT V
### Restitution/Unjust Enrichment
### (On behalf of Plaintiff and the Class)

91. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

92. Defendant has received and retained money belonging to Plaintiff and the Class members as a result of misleading marketing of its Templeton Rye whiskey. Defendant profits from each individual sale of its Templeton Rye.

93. Defendant appreciates or has knowledge of such benefit.

94.    Under principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and members of the Class, which Defendant has unjustly received as a result of its unlawful actions described herein.

95.    Plaintiff and other members of the Class suffered damages as a direct result of Defendant's conduct.

96.    Plaintiff, on his own behalf, and on behalf of the Class, seeks restitution for Defendant's unlawful conduct, as well as interest and attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Christopher McNair, on behalf of himself and members of the Class and Illinois Subclass, prays for the following relief:

a.    Certify this case as a class action on behalf of the Class and Subclass as defined above and appoint Christopher McNair as class representative and his undersigned attorneys as Class Counsel;

b.    Enter judgment against Defendant Templeton Rye Spirits, LLC, for monetary, actual, consequential, and compensatory damages caused by its unlawful conduct;

c.    Award Plaintiff and the Class reasonable costs and attorneys' fees;

d.    Award Plaintiff and the Class pre- and post-judgment interest;

e.    Enter judgment for injunctive, statutory and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and,

f.    Award such other and further relief as equity and justice may require.

\*                    \*                    \*

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Respectfully Submitted,

**CHRISTOPHER MCNAIR**, individually and on behalf of all others similarly situated,

Dated: August 29, 2014

By: /s/
One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
John Ochoa
jochoa@edelson.com
Mark S. Eisen
meisen@edelson.com
Amir Missaghi
amissaghi@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
Firm I.D.: 44146